```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
JOHN HANCOCK LIFE INSURANCE
COMPANY,

                Plaintiff,                          04 CV 98 (NG) (MDG)

  - against -

EUGENE PERCHIKOV, a/k/a EYAL SHAHAR;
THE ESTATE OF LARYSA VASSERMAN;                     ORDER
and ELIZABETH KATCHALOVA,
Administratrix of the Estate of Laryssa
Vasserman,


                Defendants.
----------------------------------------------------------------x
```

**GERSHON, United States District Judge:**

By motion dated September 29, 2008, cross-plaintiff Laryssa Vasserman, through her administratrix Elizabeth Katchalova ("Katchalova" or "plaintiff"), seeks default judgment against cross-defendant Euguene Perchikov a/k/a Eyal Shahar ("Perchikov" or "defendant"). Katchalova seeks to recover (1) life insurance proceeds received by Perchikov from Union Central Life Insurance Company as a result of Vasserman's death, plus interest; (2) damages for wrongful death, plus interest; and (3) punitive damages in the sum of $10 million. For the reasons stated below, Katchalova's motion for default judgment is granted, and damages are awarded in the sum of $6,826,466.01.[1]

---

[1] On April 16, 2008, this court granted summary judgment to John Hancock, voiding the insurance policy because it was procured by Perchikov with intent to defraud John Hancock and murder Vasserman, and because Vasserman made material misrepresentations in her policy application about her income and occupation and about the existence of other life insurance policies. *See* D.E. 91. The only remaining claims are those at issue in the instant motion.

I.  **Factual Background**[2]

Cross-plaintiff Elizabeth Katchalova, a resident of Kings County, New York, is the administratrix of the estate of Laryssa Vasserman. Vasserman, who was a resident of Ukraine until immigrating to New York in 1999, died on November 19, 2002. At the time of her death, Vasserman did not understand, speak, read, or write English. Cross-defendant Eugene Perchikov, a/k/a Eyal Shahar, is believed to be a citizen and resident of Israel. During frequent visits to the United States, he resided with Ms. Vasserman, with whom he had a romantic relationship, at her apartment in Brooklyn. At all times relevant to this action, Ms. Vasserman was married to but separated from Alexander Vasserman ("A. Vasserman" or "Mr. Vasserman"), and had a daughter, Elizabeth (Yelizaveta) Klyuchnikova ("Klyuchnikova"), from a previous marriage. Klyuchnikova was born on February 22, 1984, and resided with her mother at all times until Ms. Vasserman's death. Ms. Vasserman was the sole source of financial support for her daughter, and received no financial support from either her first husband (Klyuchnikova's father) or from Mr. Vasserman.[3]

Ms. Vasserman applied for three life insurance policies in late 2000—one for $1,000,000 from Union Central Life Insurance Company ("Union Central"), one for $1,000,000 from Metropolitan Life Insurance Company ("MetLife"), and a third for $1,500,000 from Allstate Life Insurance Company ("Allstate"). The Allstate application listed Vasserman's sister Irena Esina as the primary beneficiary and her daughter Elizabeth as the contingent beneficiary. Ms.

---

[2] The facts alleged in Katchalova's answer/cross-complaint against Perchikov are "deemed true by virtue of defendant's default." *Philip Morris USA Inc. v. ABC Chinese Food, Inc.*, No. 08-cv-4336, 2009 WL 4067997, at *1 (E.D.N.Y. Nov. 18, 2009) (BMC). For the sake of brevity, only those facts relevant to the instant motion are presented here. For a full recitation of the facts of this case, see this court's Opinion and Order granting summary judgment to John Hancock Life Insurance Company (April 16, 2008), D.E. 91.

[3] Klyuchnikova now lives with her aunt, administratrix Katchalova. Klyuchnikova attended Kingsboro Community College and currently is a student at Baruch College, from which she will graduate in 2010.

Vasserman withdrew her application before Allstate could act on it. MetLife issued a policy to Ms. Vasserman. The Union Central application, which resulted in the issuance of a policy, initially listed Ms. Vasserman's husband, Alexander Vasserman, as the primary beneficiary. Later, Ms. Vasserman changed the primary beneficiary of her Union Central policy to Irena Esina, and designated Eugene Perchikov as the contingent beneficiary, identifying both Esina and Perchikov as her cousins. Ms. Vasserman again changed her Union Central beneficiary ten months later, designating her "cousin" Eyal Shahar as the primary beneficiary.

Around the same time, Ms. Vasserman applied for a $1,000,000 life insurance policy from John Hancock. In that application, she listed Eugene Perchikov as her "husband" and primary beneficiary. When this policy lapsed in early 2001, Ms. Vasserman applied for a new $1,000,000 life insurance policy from John Hancock, this time listing Perchikov as Vasserman's "cousin" and primary beneficiary. John Hancock again issued the policy.

Perchikov accompanied Vasserman to each meeting with insurance company representatives and provided information to the companies about Ms. Vasserman's employment, income, marital status, and beneficiaries, because Vasserman could not communicate in English. Perchikov also paid the premiums on each of Vasserman's policies.

On November 19, 2002, Perchikov assaulted, battered, and murdered Ms. Vasserman for the purpose of obtaining the proceeds of the life insurance policies in force at the time of her death. Because the two year contestable period had expired, Union Central immediately paid $1,000,000 plus interest to Shahar/Perchikov as sole primary beneficiary of Vasserman's life insurance policy.[4] MetLife and John Hancock disqualified Perchikov from receiving Ms.

---

[4] Katchalova, as administratrix of Ms. Vasserman's estate, sued Union Central and other insurance companies in New York Supreme Court, Kings County, alleging that the companies were liable for wrongful death and pain and suffering because the companies' negligent issuance of life insurance policies to Ms. Vasserman led to her murder by Mr. Perchikov in order to

3

Vasserman's insurance benefits because he had intentionally caused her death, and they refused to pay him. Katchalova alleges that she—as administratrix of Vasserman's estate—is the proper beneficiary of the proceeds of Vasserman's Union Central policy. She further alleges that Perchikov is liable for wrongful death and for punitive damages.

## II. Analysis

### A. Entry of Default Judgment

Rule 55(a) of the Federal Rules of Civil Procedure sets forth the procedures for securing a default judgment in cases where "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Katchalova has completed the first step of Rule 55's two-part process by requesting that the Clerk of Court enter default judgment. Default was entered on June 3, 2008. Since Perchikov has failed to contest the default, this court may complete the Rule 55 process by entering a default judgment. Fed. R. Civ. P. 55(b).

Here, plaintiff alleges that Perchikov was unjustly enriched by receipt of Ms. Vasserman's Union Central life insurance proceeds; and that he is liable for wrongful death because he killed Ms. Vasserman specifically in order to recover said proceeds. Plaintiff's well-pleaded allegations, together with defendant's failure to appear at all in connection with this case, make clear that default judgment is appropriate in this case.

Under New York law, a life insurance beneficiary who kills the insured is disqualified from collecting the insured's life insurance proceeds. *See Riggs v. Palmer*, 70 Sickels 506, 22 N.E. 188 (N.Y. 1889); *In re Barrett*, 224 A.D.2d 415 (2d Dep't 1996). By submission of the

---

recover the policy proceeds. *Katchalova v. Perchikov*, No.4516/03 (Sup. Ct. Kings Cty. 2007). On September 11, 2007, the New York Supreme Court, Appellate Division, Second Department affirmed the dismissal of the case for failure to state a claim, stating that "New York does not presently recognize such a theory of recovery based on the negligent issuance of a life insurance policy." *Katchalova v. Perchikov*, 43 A.D.3d 873, 875 (2d Dep't 2007).

certified copy of the affidavit of Union Central claims examiner Jill O'Connor, which was originally submitted in the state court action *Katchalova v. Perchikov*, No. 45186/03 (Sup. Ct. Kings Cty. 2007), *aff'd* 43 A.D. 3d 873 (2d Dep't 2007), Katchalova has proved that Union Central paid the $1,000,000 proceeds of Ms. Vasserman's life insurance policy to Perchikov. *See* Debrot Cert. Ex. F at 7. Because Perchikov was not a proper beneficiary, he has "received the money … of another which is inequitable or against good conscience for him … to retain." *AGF York 57 L.P. v. Glikman*, 24 Misc. 3d 1225(A), 2009 WL 2208405, at *5 (Sup. Ct. N.Y. Cty. July 16, 2009) (citing *Miller v. Schloss*, 28 N.Y. 400, 407 (1916)). As such, Katchalova has offered sufficient proof of her claim that Perchikov was unjustly enriched by receipt of Vasserman's life insurance proceeds, which were paid to him to the detriment of Ms. Vasserman's rightful beneficiaries—her estate and her daughter. *See Estate of Grieco v. Bankers Am. Life Assurance Co.*, 251 A.D.2d 446, 447 (2d Dep't 1998).

Katchalova also has established a claim for wrongful death. Under New York law, "the personal representative … of a decedent who is survived by distributees may maintain an action to recover damages for a wrongful act … which caused the decedent's death against a person who would have been liable to the decedent … if death had not ensued…." N.Y. Est. Pow. & Trst. § 5-4.1. Had Ms. Vasserman survived, Perchikov would have been liable to her for battery based upon the facts alleged in Katchalova's cross-complaint. *See* Debrot Cert. Ex. C; *see also, e.g.*, *Wende C. v. United Methodist Church*, 4 N.Y.3d 293, 298 (2005).

Given that Katchalova has adequately supported the allegations, and given that defendant has not once appeared in these proceedings, the court determines that the grounds for default are clearly established, finds no reason to delay further resolution of this case, and grants Katchalova's motion for default judgment.

**B. Damages**

"While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible to mathematical computation." *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974). Where, as here, the plaintiff has submitted detailed affidavits informing the court of the basis for the recovery sought, the court can set damages without holding an evidentiary hearing. *See* Fed. R. Civ. P. 55(b)(2); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997). Having reviewed the Debrot certification and the Freifelder, Katchalova, Klyuchnikova, and Vasserman affidavits, the court finds that Perchikov is liable for the following damages.

### i. Life Insurance Proceeds

As discussed above, and as described in the affidavits of Union Central employees Jill O'Connor and Rebecca Vonderhaar, Debrot Cert. Exs. F, G, Perchikov received the proceeds of Ms. Vasserman's Union Central life insurance policy even though, by virtue of his intentional killing of Ms. Vasserman, he should have been disqualified as a beneficiary. In accordance with the terms of the Union Central policy, Ms. Vasserman's estate—through cross-plaintiff Katchalova—was the proper beneficiary of the proceeds once Perchikov was excluded. *See* Debrot Cert. Ex. F(1) (copy of Union Central policy). As such, Perchikov has been unjustly enriched by receipt of the proceeds, and must pay over to Katchalova the proceeds of the Union Central life insurance policy, plus interest. *See* N.Y. C.P.L.R. § 5001.

On April 16, 2003, Perchikov received $1,008.164.38 from Union Central, representing the policy proceeds plus interest from the date of Ms. Vasserman's death. Debrot Aff. Ex. F, ¶

6

13. Since that date, $566,785.20 in interest has accrued to date. *See* N.Y. C.P.L.R. §§ 5002, 5004. Thus, the court awards Katchalova $1,574,949.58 in life insurance proceeds.

### ii. Wrongful Death Damages

New York law permits the following recovery on a successful wrongful death claim: (1) "compensation for pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought"; (2) reasonable expenses, including funeral expenses of the decedent that were paid by the distributes; and (3) "interest upon the principal sum" at a rate of 9 percent per year. N.Y. Est. Pow. & Trst. § 5-4.3; N.Y. C.P.L.R. § 5004. Punitive damages also are available if they would have been recoverable had the decedent survived. N.Y. Est. Pow. & Trst. § 5-4.3.

Here, Katchalova, on behalf of distributees Klyuchnikova and Mr. Vasserman, seeks wrongful death damages for loss of financial support, the cost of replacing Klyuchnikova's health insurance, which was formerly provided by Ms. Vasserman's employer,[5] and loss of inheritance. Such damages are available under New York law, and Katchalova has submitted sufficient proof of damages in the form of the affidavit of Leonard R. Freifelder, Ph.D, an expert in the application of economic models and statistical analysis. In his affidavit, Dr. Freifelder opines that Ms. Vasserman's estate suffered a total economic loss of $245,091, comprised of $124,954 in past loss of financial support and health insurance as of December 31, 2008 (Freifelder's projected date of decision in this case), and $120,137 in loss of future inheritance. Freifelder Aff. Ex. B. 12-13.

---

[5] Katchalova seeks to recover the cost of replacing Klyuchnikova's health insurance from the time of Ms. Vasserman's death until Klyuchnikova's twenty-third birthday, February 22, 2007. According to Dr. Freifelder, New York health insurers "cover dependent children on their parent's policy until the age of 23, if the child is in school…." Freifelder Aff. Ex. B. 6.

The court accepts Freifelder's calculations regarding recoverable wrongful death damages. The court awards $245,090.00 in wrongful death damages, representing the principal calculated in the Freifelder Affidavit, plus interest from Ms. Vasserman's death to Katchalova's estimated date of verdict, December 31, 2008.[6] This total is one dollar less than Dr. Freifelder's total, which reflected a mathematical error.[7]

In addition, the court awards to Katchalova $4,145.00 in funeral expenses plus $2,281.43 in interest from the date of Ms. Vasserman's death to December 31, 2008, for a total of $6,426.43. *See* Katchalova Aff. ¶ 18, and Ex. D.

The total wrongful death damages, inclusive of funeral expenses and interest, are as follows:[8]

| Injury | Recovery | Total Interest (9% per annum from 11/19/2002 to 12/31/2008) | Total |
| --- | --- | --- | --- |
| Funeral Expenses | $4,145.00 | $2,281.43 | $6,426.43 |
| Health Insurance | $21,339.00 | $6,699.00 | $28,038.00 |
| Loss of Financial Support | $80,630.00 | $16,285.00 | $96,915.00 |
| Loss of Inheritance | $120,137.00 | N/A | $120,137.00 |
| | | **Total =** | **$251,516.43** |

### iii. Punitive Damages

Punitive damages are available to redress a defendant's "outrageous" conduct. *Exxon Shipping Co. v. Baker*, --- U.S. ----, 128 S.Ct. 2605, 2621-22 (2008). The Supreme Court has

---

[6] Because the amount of interest accrued depends upon Ms. Vasserman's earning potential and on the projected price of health insurance—both of which vary from year to year—the court awards interest only up to December 31, 2008, the date Dr. Freifelder used as the estimated date of verdict. If Katchalova would like to recover for interest accrued between December 31, 2008, and the date of this decision, she may make a proffer to that effect no later than 60 days from today.

[7] In Dr. Freifelder's calculations, the total award for financial support and health insurance comes to $124,954. *See* Frefelder Aff. Ex. B. 13. However, the court has checked these amounts and found that $96,915 plus $28,038 equals $124,953.

[8] The calculation of interest for each year is set out in the Freifelder Affidavit, Exhibit B, 14-16.

instructed that punitive damages "should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).

While the Supreme Court has "rejected the notion that the constitutional line is marked by a simple mathematical formula," *BMW of North America v. Gore*, 517 U.S. 559, 582 (1996), the Court has determined that "few awards exceeding a single-digit ratio between punitive and compensatory damages … will satisfy" the constraints of due process—particularly, the requirement that "a penalty should be reasonably predictable in its severity." *Baker*, 128 S.Ct. at 2627; *State Farm*, 538 U.S. at 425. In some cases, the appropriate ratio will be far lower. *See, e.g.*, *Baker*, 128 S.Ct. at 2632, 2633 (holding that a ratio of 1:1 is the "fair upper limit" in maritime tort cases "of reckless action, pointless to the tortfeasor, resulting in substantial recovery for substantial injury."). However, heavier punitive damages have been found to be justified in circumstances where the "wrongdoer" acts or fails to act "in order to augment profit," or where one acts willfully or maliciously "with a purpose to injure." *Baker*, 128 S.Ct. at 2622. In addition, relatively large punitive damages awards are justified where "wrongdoing is hard to detect (increasing chances of getting away with it)" or where "the value of the injury and the corresponding compensatory award are small (providing low incentives to sue)." *Id.*

In this case, Perchikov engaged in reprehensible, malicious conduct with both a purpose to injure and the desire to profit. He targeted a woman who was especially vulnerable because of her inability to speak English and status as a recent immigrant. He not only helped her apply for life insurance, but also completed the forms for her, and, in doing so, supplied information he knew to be false to the life insurance companies. He killed Ms. Vasserman specifically to

recover her life insurance benefits. And, because Ms. Vasserman earned a small salary, the compensatory damages available to her estate and to her daughter are small in comparison to the egregiousness of Perchikov's act and the resulting harm. *Gore*, 517 U.S. at 582. For these reasons, the court awards $5 million in punitive damages.[9]

**III. Conclusion**

For the foregoing reasons, Katchalova's motion for default judgment is granted, and damages are awarded in the sum of $6,826,466.01, representing $1,574,949.58 in insurance proceeds, $251,516.43 in wrongful death damages, and $5 million in punitive damages. The Clerk of Court is directed to enter judgment accordingly and close this case.

**SO ORDERED.**

___/**s**/ *Nina Gershon*_____
**NINA GERSHON**
**United States District Judge**

Dated: January 15, 2010
      Brooklyn, New York

---

[9] In setting this punitive damage award, the court has not considered the allegations that Perchikov has murdered other women in circumstances similar to the facts of this case. *See, e.g.*, *Ganelina v. Perchikov*, 22 Misc. 3d 1137(A) (Table), 2009 WL 737312, (Sup. Ct. N.Y. Cty. March 11, 2009). While Mr. Perchikov does appear to be an "unsavory individual," *State Farm*, 538 U.S. at 423, who has even written and "self-published a short story in which he described the method of murder that allegedly occurred here," *Ganelina*, 2009 WL 737312, at *2, "due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis." *State Farm*, 538 U.S. at 423.